IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06CR36-2, |
| | ) | 1:06CR36-3, |
| JEFFREY LAMONT ALEXANDER, | ) | 1:06CR36-4 |
| JOSHUA LEE BARE and JOSHUA | ) | |
| MATTHEW MANN, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Beaty, District Judge.

This matter is before the Court on objections filed by Defendants Jeffrey LaMont Alexander ("Alexander") Joshua Lee Bare ("Bare") and Joshua Matthew Mann ("Mann") (together, "Defendants") regarding the calculation of the advisory Federal Sentencing Guideline for their offenses as calculated in their Presentence Investigation Reports. The Court heard argument in this matter on August 23, 2006 as to Defendants Bare and Mann, and on August 29, 2006 as to Defendant Alexander, and at that time made a number of findings of fact regarding the applicable Sentencing Guideline. See United States v. Hughes, 401 F.3d 540, 558 (4th Cir. 2005) (noting that the first step a district court must take in terms of sentencing "is to determine the range prescribed by the guidelines after making such findings of fact as are necessary"). While at the hearings the Court orally listed a number of the factors it considered in finding the applicable advisory Sentencing Guideline range, this Order will also set out the Court's reasoning

for finding as it did.

I.    FACTUAL BACKGROUND

Defendants in this case were charged with and pled guilty to the offenses of malicious destruction of property, in violation of 18 U.S.C. § 844(i),  discharge of firearms during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of unregistered destructive devices, in violation of 26 U.S.C. §§ 5861(d), 5871, all in connection with their involvement in an incident on March 13, 2005 in which they threw six "Molotov cocktails" into an occupied dwelling at night, and fired multiple shots from two .22 caliber pistols into the dwelling, one of which struck Ms. Lora Bowers in the back.  The following facts were disclosed in each Defendants' Presentence Report, or were detailed in statements by Defendants to police after their arrest.[1]  On or about March 4, 2005, an individual named Tracey Castle ("Castle") allegedly raped an individual named Cammie Meadows ("Meadows").  A few days after this alleged incident, Joseph Zacarolo ("Zacarolo"), a co-defendant with Mann, Bare, and Alexander, learned of the alleged rape and wanted to seek "revenge" for one of his "girls" (Bare statement). During the evening of March 12, 2005, Zacarolo and seven or eight other individuals, including Mann,  Bare, and Alexander, met at a residence on Lakeview Street in Rowan County, North Carolina, to plan revenge against Castle.  During this time, Zacarolo stated that he "want[ed] to kill" Castle (Mann statement) and  that Castle would "pay for what he did" (Bare statement).

_____

[1] Where a statement comes directly from one of the Defendants' statements to police, instead of from the Presentence Reports, the Court will list the source.

Case 1:06-cr-00036-LCB    Document 56    Filed 09/29/06    Page 2 of 7

According to Mann, "all night [Zacarolo] was talking about wanting to kill the dude that raped this girl." (Mann Statement). At some point, after some drinking and drug use, Mann and another individual went to W. C. Street and obtained kerosene from the house of a person named Ghost. They then all returned to the house on Lakeview Street where Zacarolo and Alexander made six Molotov cocktails. (Mann statement). Zacarolo and Alexander carried the Molotov cocktails to a car. Zacarolo also had a Lorcin .22 caliber pistol, model L22, serial number 082649, and a .22 caliber revolver, make, model and serial number unknown. Zacarolo then gave out directions to Castle's home, because none of the other individuals knew where Castle lived.

Two cars filled with Zacarolo, Bare, Mann, Alexander and the other individuals arrived at the Castle residence shortly after midnight. The house was dark, with at least one car parked outside. Upon arrival, the cars in which the Defendants were riding parked on opposite sides of the street. Mann "grabbed one of the Molotov cocktails," Zacarolo grabbed two, Ghost had one, and Alexander had one. (Mann statement). The Molotov cocktails were then lit. Defendant Mann later stated that he could not throw his Molotov cocktail into the house as they had planned, and instead threw it on the ground, hitting a car. (Mann statement). After throwing his Molotov cocktail, Mann saw Bare and an individual named Brandon firing guns into the residence (Mann statement), while Bare saw only Zacarolo fire a gun into the residence (Bare statement). After firing at least 9 rounds into the residence, the individuals returned to the cars and drove away. Mann further told police that their intentions were to "go there and teach this dude not to ever touch another woman," and to "burn the house down." (Mann statement).

3

The result of the attack was the gunshot injury to a guest of Castle, Ms. Lora Bowers ("Bowers"), who was staying in the front bedroom with her husband and two children, ages four (4) and three (3). Both the kerosene Molotov cocktails and the bullets entered the Bowers' bedroom. Mr. and Mrs. Bowers awoke and saw fire at the end of their bed. Mr. Bowers attempted to put the fire out while Mrs. Bowers attempted to get her children out of the residence. While the Molotov cocktails ultimately caused minimal damage to the residence, one of the bullets lodged in Bowers' back, which medical personnel initially decided not to remove based upon its location. However, that wound later became infected and the bullet had to be removed.

## II. CALCULATION OF ADVISORY SENTENCING GUIDELINE

In this case, the Probation Office made the following Sentencing Guideline recommendations. First, U.S.S.G. § 2K2.1(c)(1)(A) was applied, which directs that if the firearms in the offense were used in the commission or attempted commission of another offense, the Court is to apply U.S.S.G. § 2X1.1. Section 2X1.1(c)(1) then further directs that when an attempt is expressly covered by another guideline section, the Court is to apply that guideline section. Thus, in this case, the Probation Office recommended the application of U.S.S.G. § 2A2.1, assault with intent to commit murder or attempted murder.

At the hearings, Defendants did not object to the actual facts presented by their Presentence Reports. Instead, Defendants contend that the facts indicate an assault or an arson, and not assault with intent to commit murder or attempted murder. All three Defendants

4

therefore contested the assignment of the cross reference to U.S.S.G. § 2A2.1. Defendants assert that a more representative guideline would instead be U.S.S.G. § 2A2.2, aggravated assault. Defendants make this argument primarily because they assert that the intent of Defendants was to commit a felony arson, and not to kill or attempt to kill any person. Defendants also contend that they could not form the requisite intent due to their intoxication.

## III.     FINDINGS AND CONCLUSIONS

In light of these contentions, the Court has considered the evidence before it, including the undisputed facts in the Presentence Reports and Defendants own statements to police, and made the following findings by a preponderance of the evidence, see United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005):

1.      Zacarolo clearly expressed his specific intent to "kill" Castle following the alleged attack on Ms. Meadows. For example, various statements were made by Zacarolo in the Defendants' presence, including that he intended to "kill" Castle, and to make him "pay for what he did."

2.      Defendants admitted to conspiring with Zacarolo as to ways to get back at Castle.

3.      As a result of this planning, Defendant Mann went to another house in order to find kerosene to make Molotov cocktails, and Defendant Alexander was able to manufacture the devices. Thus, despite consuming alcohol and other drugs, the Court finds that the Defendants were capable of rational thought and intentional behavior.

5

4.      Defendants Mann and Alexander made six Molotov cocktails, and Defendant Bare retrieved guns in order to commit the crime. Thus, Defendants did not stop at conspiring to kill Castle, but in fact made incendiary devices, a substantial step toward completion of the crime.

5.      All of the Defendants by their actions took substantial steps to join in and effect Zacorolo's plan, and by their actions demonstrated their similar intent to "kill" Castle.

6.      All of the Defendants then drove to Castle's home and arrived there after midnight. No lights were on in the house but there were cars parked outside of it.

7.      Defendants Alexander and Mann then threw the Molotov cocktails at the dwelling, into the front bedroom window. The bedroom was occupied by the Bowers and their two small children.

8.      Defendant Bare then fired ammunition into the dwelling, particularly into the front bedroom window, and in fact struck Ms. Bowers.

9.      Such actions go beyond any later statements by Defendants that their actual intent was merely to scare Castle.

10.     Defendants by their actions manifested an intent to kill Castle or anyone else in the house. The efforts were the result of willful, deliberate, malicious, premeditated planning to kill Castle. Moreover, even though Defendant Mann

6

told police that he threw his Molotov cocktail not at the house, but at the ground, thereby hitting a car, Defendant Mann's premeditation and deliberation was in fact to kill Castle and he had both the intent to commit murder and undertook a direct act to culminate the commission of the crime.

11.     All of Defendants' actions amount to specific intent to murder Castle and that, in fact, caused serious injury to Ms. Bowers.

Based upon these factual findings, the Court finds the applicable Sentencing Guidelines provision is U.S.S.G. § 2A2.1, assault with intent to commit murder or attempted murder, and not § 2A2.2, aggravated assault.[2]  Therefore, in determining Defendants' advisory Sentencing Guidelines range, the Court applied U.S.S.G. § 2A2.1, assault with intent to commit murder or attempted murder.  The Court then considered the advisory Sentencing Guideline range along with the sentencing factors in 18 U.S.C. § 3553(a) in imposing a discretionary sentence as to each Defendant in this case.

This, the 29th day of September, 2006.

United States District Judge

_____

[2] The Court also notes that the same advisory Guidelines calculation would result if the cross reference were instead made to U.S.S.G. § 2A1.5 for Conspiracy to Commit Murder, which would also be supported by the evidence presented and the findings outlined above.

7