# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JEFFREY LAMONT ALEXANDER,       )
                                )
                Petitioner,     )
                                )
        v.                      )       1:09CV134
                                )       1:06CR36-2
UNITED STATES OF AMERICA,       )
                                )
                Respondent.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Jeffrey Lamont Alexander, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 124.)[1] Petitioner was originally charged with one count of damaging and destroying by means of fire and explosive a building used in interstate and foreign commerce in violation of 18 U.S.C. § 844, one count of carrying and using by discharging firearms during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii), one count of carrying and using destructive devices during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (c)(1)(B)(ii), and one count of possession of firearms which had not been registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861(d) and 5871. (Docket No. 1.) He later pled guilty to the damaging and destroying a building charge, the discharging a firearm charge, and the possession of unregistered weapons charge. The carrying and using a destructive device charge

_____

[1]This and all further cites to the record are to the criminal case.

was dismissed. (Docket Nos. 35, 38.) Petitioner was sentenced to 108 months of imprisonment on the first charge, a consecutive 120 months of imprisonment on the second charge, and a concurrent 108 months of imprisonment on the third charge. (Docket No. 57.)

Petitioner did pursue a direct appeal, but the Fourth Circuit denied his appeal. (Docket Nos. 101, 105.) Petitioner then filed his current motion under § 2255. (Docket No. 124.) Respondent has filed a response seeking to have the motion denied. (Docket No. 140.) Despite being informed of his right to file a reply, Petitioner has not done so.

## FACTS

The basic facts of the case, as set out in the Presentence Report (PSR) and the factual basis supporting Petitioner's guilty plea, are as follows. On March 4, 2005, a man named Tracey Castle went to the home of Cammie Meadows to pick up Meadows' son. Castle and his wife were to babysit the son. During the stop, Meadows and Castle had intimate relations of some type. A few days later, Meadows told her boyfriend, Joseph Zacarolo, that Castle had raped her. She never reported the rape to law enforcement.

On March 12, 2005, Zacarolo and others, including Petitioner, met at a house in Rowan County, North Carolina, where they consumed drugs and alcohol. They also discussed the rape and decided to avenge that alleged crime. They obtained two .22 caliber handguns and made six "Molotov cocktails" before driving to Castle's residence in the early hours of March 13, 2005. The residence was a single-family dwelling that Castle and his family rented from

-2-

Clyde Huntsman. Castle was not alone in the house. Inside with him were his wife and three children, ages 12, 11, and 8, and relatives visiting from out-of-town, Louis and Lora Bowers and their two children, ages 3 and 4. All of the occupants were in bed asleep.

Upon arriving at the residence, Zacarolo, a juvenile, Joshua Bare, Jeffrey Alexander, and Joshua Mann exited the vehicles in which they had been riding and stood in front of Castle's home. Zacarolo, the juvenile, Alexander, and Mann then lit and threw the six "Molotov cocktails" at the house. Shortly thereafter, the juvenile and Bare shot into the residence using the handguns. The Bowers family suffered the brunt of the attack. The two "Molotov cocktails" that actually entered the house went through the window of their bedroom, setting their bed on fire. Their car had another of the incendiary devices thrown through the driver's side window. Most of the bullets that were fired also entered the residence in the area of their bedroom, with one bullet striking Ms. Bowers in her left shoulder/back. It was initially left inside her shoulder, but later had to be removed after the wound became infected. Fortunately, this was the worst injury suffered by anyone in the Castles' home that night.

## PETITIONER'S CLAIMS

Petitioner raises four possible claims for relief. The first of these is for ineffective assistance of counsel. He claims that his attorney erred by failing to challenge the jurisdiction of the Court to hear the case, that he did not argue the sentencing

-3-

factors set out in 18 U.S.C. § 3553A, that he did not tell Petitioner that his codefendant had filed a motion to dismiss, that his attorney did not file a motion for discovery, and that he lied to Petitioner about not being able to obtain discovery. Petitioner's second claim alleges prosecutorial misconduct because, following the signing of the plea agreement, the government pursued an "attempted first degree murder charge" that was not set out in the indictment. His third claim states that the government failed to establish personal and subject matter jurisdiction in open court. Finally, Petitioner's fourth claim is related to his second. He argues that the sentencing judge abused his discretion in allowing the government to pursue the first-degree murder enhancement.

### DISCUSSION

### Claim One

Petitioner's first claim is one for ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir.

-4-

1999).   A petitioner bears the burden of affirmatively showing deficient performance.   See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994).   To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial.   Hill v. Lockhart, 474 U.S. 52 (1985).

Two of Petitioner's ineffective assistance of counsel allegations are that counsel did not challenge jurisdiction in the case and that he did not tell Petitioner about a motion to dismiss filed by a codefendant.   Petitioner's claims are largely unexplained, but appear to refer to "jurisdictional" arguments raised in a motion to dismiss filed by codefendant Zacarolo.   That motion maintained that, because the Castles' residence was a single-family residence rented to citizens of North Carolina by another citizen of North Carolina without the use of any real estate or property management company, it was not used in interstate commerce and, therefore, was not a building subject to Congress' power to regulate interstate commerce.   (Docket Nos. 27, 28.)   This argument was based primarily on three cases, two from the United States Supreme Court and one from the Seventh Circuit.

The first case is Russell v. United States, 471 U.S. 858 (1985).   In Russell, the owner of a two-unit apartment building attempted to burn the building while it was being rented.   The Supreme Court held that, because the building was rented at the time of the crime, it was being used in interstate commerce within

-5-

the meaning of the federal arson statute. Id. at 861. Five years later, in Jones v. United States, 529 U.S. 848 (2000), the Supreme Court addressed a situation where a property owner burned the residence that he occupied. The Supreme Court noted that 18 U.S.C. § 844(i) contains the words "used in." It stated that those words placed the proper inquiry onto the function of the building and whether that function affects interstate commerce. The Court rejected consideration of such non-use factors as the receiving of natural gas, a mortgage, or an insurance policy because these items, while perhaps interstate and commercial, were not the function or use of the building. It held that while the renting of a building was "'unquestionably'" an interstate commercial activity, simply living in a building as a residence was not a "use" that affected interstate commerce. Jones, 529 U.S. at 856.

The Seventh Circuit case relied upon by Zacarolo was United States v. Veysey, 334 F.3d 600 (7th Cir. 2003). In that case, the residence burned in an arson was one that was rented to tenants by "a typical householder, who after living in the house for several years had moved to another state and after trying unsuccessfully to sell the house decided to rent it." Id. at 603. Therefore, the owner of the house was not in the rental business per se, but was merely renting because he could not sell.

Zacarolo's motion focused on language in Veysey stating that the case lay somewhere in between Russell and Jones. He argued in his brief supporting his motion to dismiss that this meant that there was a "gap" between those two cases. He maintained that the

-6-

present case fell into that gap. Although acknowledging that the Seventh Circuit ultimately found interstate commercial use in Veysey, Zacarolo attempted to distinguish the present case as being more on the Jones side of the "gap" by noting that the landlord and renters in this case lived in the same state and that the landlord did not use any type of rental agent to handle the property. (Docket No. 28.) Petitioner apparently wishes that his attorney had also made such a motion, or that he had at least notified Petitioner of the motion and discussed it with him.

Petitioner's attorney agrees that he did not make a jurisdictional challenge in the case. He also admits that he knew of Zacarolo's motion. In fact, he researched the issues raised in that motion, but concluded that they were without merit and that raising them would not be an appropriate strategy. His notes do not reflect that he discussed the motion with Petitioner. However, he believes that he did and confirms that, in any event, his advice to Petitioner would have been not to file such a motion himself. Raising the motion and pursuing the issue would have required taking the case to trial. (Docket No. 140, Ex. A.) As Petitioner's former attorney points out, the evidence against Petitioner was very strong and he had no real way to contest the case at trial. Not only this, but the plea agreement being offered by the government exposed Petitioner to 15 years to life in prison. A loss at trial, which the attorney considered very likely, would have exposed Petitioner to a sentence of 45 years to life because

of the additional § 924(c) count. That count alone would have carried a mandatory consecutive sentence of at least thirty years.

Not only did Petitioner face a likely loss followed by a much longer sentence if he went to trial, but his attorney was correct as to the lack of merit in the arguments raised in Zacarolo's motion. Whatever distance there may be between _Russell_ and _Jones_, there is no distance on one critical point: rental property is property used in commerce under the federal arson statute. This was stated in _Russell_ and reiterated in _Jones_. In fact, _Jones_ is particularly instructive because it rejected the government's attempts to move the focus of the determination away from a building's use and toward other commercial ties such as mortgages, insurance, and natural gas. The Supreme Court rejected these factors because they were not the building's "use." For the same reason, such factors as the state of the landlord's residence and the use or lack of use of a rental agent are also irrelevant. All that matters is "use," and the rental of the property is a "use" "in interstate or foreign commerce" under § 844(i). That was the rule in _Russell_ and in _Veysey_. Nothing in _Jones_ calls that principle into question. This has also been the conclusion of the Fourth Circuit in a case involving the rental of a single-family residence. _United States v. Parsons_, 993 F.2d 38, 40 (4th Cir. 1993)(_Russell_ holds that rental of property is per se a use affecting interstate commerce).

In the end, Petitioner faced a likely loss at trial, a much longer sentence if he went to trial and lost, and no real chance at

-8-

making a successful motion to dismiss. He has not explained why, given this situation he, or any reasonable defendant, would have chosen to go to trial instead of pleading guilty and accepting a lower sentence as he did. For the reasons just set out, counsel did not err by failing to raise the same arguments as Zacarolo. Whether or not he discussed those arguments with Petitioner, he still caused him no prejudice because the arguments were without merit and because Petitioner has not shown he would have rejected the plea offer to pursue the meritless arguments and face a 45-year minimum sentence following a trial. Petitioner's first and third accusations of ineffective assistance of counsel should be denied.

Petitioner's next allegation of ineffective assistance of counsel is that his attorney did not properly argue the sentencing factors under 18 U.S.C. § 3553A. Petitioner has not set out which of those factors he feels applied to his case but were not argued by counsel. His claim is conclusory and fails for that reason alone. Further, his attorney did argue a number of the factors listed in that statute. He requested a lower sentence based on Petitioner's lack of a serious criminal history, consistent work history, completion of more schooling than his codefendants, intelligence, general good character, and his assisting younger inmates while awaiting adjudication. (Docket No. 76 at 6-8, 18.) Petitioner does not show any other factors that could have been argued. His claim should be denied for being conclusory and because it is contradicted by the record in the case.

Petitioner's final two claims for ineffective assistance of counsel are that his attorney failed to file a discovery motion and lied to him about not being able to obtain discovery. As Respondent points out, there would have been no need for a discovery motion in the case. The longstanding practice of the United States Attorney's Office in this District is that it has an "open file policy" which allows defense counsel to examine all of the discoverable evidence in a case. Petitioner's counsel did examine the file in this matter. (Docket No. 140, Ex. A.) Petitioner has not shown that a motion for discovery would have produced further evidence or that it would have been anything other than a meaningless formality. As for the alleged "lie" to Petitioner, he is not specific as to the nature of the lie. If the attorney's statement was that discovery was not necessary or that no further discovery information could be obtained due to the open file policy, this was not a lie, but a correct statement of fact. More importantly, Petitioner has not pointed to any information in the case that he did not receive, much less any information that would have changed the outcome of the case. Whatever the statement of the attorney, Petitioner has not shown any possible prejudice. Petitioner's remaining claims of ineffective assistance of counsel should also be denied.

### Claims Two and Four

Petitioner's second and fourth claims are closely related. His second claim alleges prosecutorial misconduct based on the fact that the government sought to apply an attempted first-degree

-10-

murder enhancement at sentencing.  He notes that attempted murder was not charged in the indictment.  Petitioner's fourth claim states that the sentencing judge abused his discretion by actually applying the enhancement at sentencing.

Both claims easily fail.  The enhancement to which Petitioner refers was applied at sentencing over his counsel's objection.  It was also challenged on appeal, but the application of the enhancement was upheld by the Fourth Circuit.  In no way was it improper for the prosecution to pursue what has been upheld as a valid enhancement.  Likewise, the sentencing judge's decision at sentencing was upheld on appeal.  Petitioner cannot now relitigate that point in a § 2255 motion.  <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182 (4th Cir. 1976).  These claims should both be denied.

## Claim Three

Petitioner's final claim for relief states that the government failed to establish personal and subject matter jurisdiction in open court.  Petitioner does not explain this claim or bolster it with any supporting facts or arguments.  If it is a reference to the arguments raised in the motion to dismiss filed by Zacarolo, it easily fails.  The government alleged all elements of the offense in the indictment and Petitioner pled guilty to the offense. (<u>Compare</u> Docket No. 1, Count 1 <u>with</u> 18 U.S.C. § 844(1).)  Also, the use of the property in interstate commerce was noted in the factual basis.  (Docket No. 38.)  Nothing more needed to be done to establish jurisdiction in the case.  Petitioner's third claim for relief should be denied.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside, or correct sentence (Docket No. 124) be **DENIED** and that Judgment be entered dismissing this action.

    /s/ Donald P. Dietrich    
**Donald P. Dietrich**
**United States Magistrate Judge**

October 19, 2009